UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| WILLIAM HENRY FRISON JR., | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:25-cv-04016-SLD |
| DEPARTMENT OF THE ARMY, FORT SILL, OKLAHOMA, LAWSON, OK, C BATTERY, 2ND/30TH; JOHN GRAUPMANN, IOWA LEGAL AID DAVENPORT RO HELPPARA; THOMAS ROBRECHT – THE MEDICAL BOARD; SAMMY STOKES; LEROY DANIELS III; ROBERT HERFF; PRIVATE CARTER; PHIL MICKELSON, | ) |
| Defendants. | ) |

ORDER

The matter comes before the Court for Merit Review of Plaintiff William Henry Frison Jr.'s Complaint, ECF No. 1, and for ruling on Plaintiff's motion to proceed *in forma pauperis* ("IFP"), ECF No. 2, and motion to request counsel, ECF No. 3. For the reasons that follow, both the motion to proceed IFP and motion to request counsel are DENIED WITHOUT PREJUDICE and the Complaint is DISMISSED WITHOUT PREJUDICE for failure to state a claim.

### BACKGROUND

Plaintiff's narrative focuses on July 6, 1989. Compl. 5.[1] He alleges that "the night of basic training graduation in the Army barracks at Fort Sill, Oklahoma" he was "targeted . . . for sexual assault and abuse." *Id.* at 7. Defendant Robert Herff attempted to enter the shower with Plaintiff, but Plaintiff "punched him to push him away." *Id.* Plaintiff then entered his bunk to lie

---

[1] The Court uses the page numbers generated by CM/ECF because the Complaint is inconsistently paginated.

1

down, but Herff again approached him, this time sexually touching and penetrating him. Plaintiff was awoken by this and "got up from his bunk and attempted to store his duffel bag away for the next day." *Id.* Another Defendant, Private Carter, "came and draped his towel around him as he was on his knees attending to his duffel bag and wiped semen across his neck with his penis." *Id.* Enraged, Plaintiff berated Carter and punched him. *Id.* Carter eventually overpowered Plaintiff, "punching him in the face and kicking him several times." *Id.* Herff and Defendant Drill Sergeant Phil Mickelson also began to batter Plaintiff, and he was eventually knocked unconscious. *Id.*

The Court presumes that Plaintiff intends to assert that Defendant Department of the Army is responsible for the conduct of its agents. But left wholly unexplained are the roles played by Defendants Captain Thomas Robrecht, Sammy Stokes, or Private Leroy Daniels III. Further compounding these ambiguities are Plaintiff's request that the Court "ensure that [his] [Freedom of Information Act ("FOIA"), 5 U.S.C. § 552] request [is] satisfied" and his reference to his "Administrative Tort Claim (Form SF95)," *id.* at 5, which presumably refers to the Form SF95 attached to his Complaint, *see* SF95 Claim for Damage, Injury, or Death, ECF No. 1-1. He further attaches a district court decision related to the violation of an Air Force Academy cadet's constitutional rights. *See generally* Caselaw, ECF No. 1-2; *Saum v. Widnall*, 912 F. Supp. 1384 (D. Colo. 1996). Next, he includes a transcript from a May 23, 2002 hearing before Alternate Decision Review Officer Jim Wallace at the U.S. Department of Veterans Affairs. *See generally* May 23, 2002 Hr'g Tr., ECF No. 1-3 (annotated as "sworn testimony descriptive of PTSD highlighted" (capitalization altered)). Plaintiff was represented at that hearing by Defendant John Graupmann, a non-attorney legal assistant, and Graupmann conducted direct examinations of Plaintiff, his mother, his pastor, his friend from the Army, and that friend's wife. *Id.* They all

provided testimony regarding their recollections of events surrounding the night of July 6, 1989, and/or Plaintiff's physical, mental, and emotional state before and after that night, seemingly to show that the incident was the cause of Plaintiff's damages and blindness. *See id.* Plaintiff then attaches various medical records and correspondence—spanning dates between November 18, 1993 and February 3, 1999—from medical professionals who examined and treated Plaintiff's eyes. *See generally* Medical Records & Correspondence, ECF No. 1-4.

Plaintiff closes his narrative by asserting that Defendants' conduct "violated his liberty, due process and equal protection rights," stating that "rules and regulations prohibiting" this sexual violence were not followed, and seeking a declaratory judgment to that effect as well as "monetary restitution" in the amount of "$5.5 Billion." Compl. at 5, 7. Plaintiff also requests that the Court "subpoena all persons involved" to correct these wrongs. *Id.* at 5. As the asserted basis of the Court's jurisdiction, Plaintiff states: "Due Process, Denial of Freedom of Information, Unnecessary and prolonged denial of basic human rights, Defrauded, Denial of Civil Liberties, Intentional, Aggravated & Prolonged Pain and Suffering." *Id.* at 4.

## DISCUSSION

### I. IFP Motion

Plaintiff moves to proceed IFP pursuant to 28 U.S.C. § 1915(a)(1). Some of the information in Plaintiff's IFP motion is difficult to discern because Plaintiff scribbled out some numbers and extensively annotated other sections. *See, e.g.*, IFP Mot. 1[2] (scribbling out some numbers and asserting that he had received "$2,56800" [sic] in child support over the past 12 months). Plaintiff asserts that he owns a home, two cars, and has some money in a bank account. As best the Court can tell, Plaintiff's monthly household income exceeds his monthly household

---

[2] The Court uses the page numbers generated by CM/ECF because the IFP pages are submitted out of order or are unpaginated.

3

expenses by about $565.44, such that Plaintiff could afford a $405 expense and still provide "the necessities of life" for himself and his family. *See Zaun v. Dobbin*, 628 F.2d 990, 992 (7th Cir. 1980) (quotation marks omitted); Clerk's Office, United States District Court Central District of Illinois, https://www.ilcd.uscourts.gov/clerks-office (last visited Apr. 10, 2025) (establishing that the current filing fee for a civil case is $405). Therefore, Plaintiff's IFP motion is DENIED WITHOUT PREJUDICE. Plaintiff may file an amended IFP motion if he made typographical errors, the correction of which would change the Court's analysis, by May 7, 2025.

## II. Merit Review

### A. Legal Standard

The court must dismiss a complaint brought by an individual seeking to proceed IFP if it determines the complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii); *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). The Federal Rule of Civil Procedure 12(b)(6) standard applies when determining if a complaint fails to state a claim under § 1915(e)(2)(B)(ii). *Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 468 (7th Cir. 2017). Thus, the court takes all well-pleaded allegations as true and views them in the light most favorable to the plaintiff. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

### B. Analysis

The Federal Rules of Civil Procedure requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Allegations "must be simple, concise, and direct," *id.* 8(d)(1), and claims or defenses must be stated "in numbered paragraphs, each limited as far as practicable to a single set of circumstances," *id.* 10(b). These rules are meant to structure pleadings such that a party will

receive "fair notice of the claims against them and the grounds supporting the claims." *Stanard v. Nygren*, 658 F.3d 792, 797 (7th Cir. 2011).

At bottom, Plaintiff's Complaint is so devoid of factual detail that the Court cannot discern the basic what, when, or where underpinning Plaintiff's grievances against most Defendants. There are no allegations related to Robrecht, Stokes, or Daniels. As to Graupmann, the Court could surmise that Plaintiff is somehow dissatisfied with Graupmann's performance at the May 23, 2002 administrative hearing—exactly how or why is left unexplained. Plaintiff's attachments suggest that Plaintiff has previously tried to seek compensation from the federal government, but it is wholly unclear how those efforts were resolved. Simply put, the Complaint fails to put Robrecht, Stokes, Daniels, or Graupmann on notice as to what they did wrong. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (holding that a complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests" (alterations and quotation marks omitted)). Therefore, the claims against Robrecht, Stokes, Daniels, and Graupmann must be dismissed. Further, the claims related to FOIA requests and the SF95 are similarly unexplained, such that the Court cannot discern when those requests were made, whether they were denied, and if so, by who and when. These claims must also be dismissed.

The Court turns to the only factual allegations described by Plaintiff. *See* Compl. 7. Although the conduct of Carter, Herff, and Mickelson is described in some detail, it is unclear how this Court would have jurisdiction over Plaintiff's claims. These military servicemembers would likely be federal officials enforcing federal law, and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, would be the only conceivably available vehicle for Plaintiff's claims against Carter, Herff, Mickelson, and the Army. *See, e.g.*, *Pittman v. U.S. Postal Serv.*, No. 22-cv-1433, 2023 WL 8807252, at *4 (N.D. Ill. Dec. 20, 2023) ("The Federal

5

Tort Claims Act – meaning federal law – is the exclusive pathway for tort claims against federal employees."), *aff'd*, No. 24-1088, 2024 WL 4274707 (7th Cir. Sept. 24, 2024). But the FTCA excludes certain claims, including situations where "adjudication of the allegations of the complaint require that the court pass judgment on the Armed Forces' decisions about fundamental issues regarding the supervision, control, and discipline of servicemen." *Smith v. United States*, 196 F.3d 774, 777 (7th Cir. 1999); *see also Feres v. United States*, 340 U.S. 135, 141–42 (1950) (describing the scope of claims allowed under the FTCA and noting the historical absence of statutory causes of action which "permitted members of [a state's] militia to maintain tort actions for injuries suffered in the service"); *Bartley v. U.S. Dep't of the Army*, 221 F. Supp. 2d 934, 948 (C.D. Ill. 2002) ("[A] failure to supervise and properly train claim runs afoul of the *Feres* doctrine as a full adjudication of such claim would implicate questions of military discipline."). Based on the information which Plaintiff has provided thus far, the Court would lack jurisdiction over his claim that the Army failed to supervise and properly train his fellow servicemembers.[3]

Even if Plaintiff's claims came within the scope of the FTCA, Plaintiff's claims are likely time-barred. Tort claims against the United States need to be presented in writing to the relevant

---

[3] The Supreme Court has previously recognized a cause of action for adjudicating whether federal officials acting under color of federal law violated a plaintiff's Fourth Amendment rights. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 395–97 (1971); *see also Carlson v. Green*, 446 U.S. 14, 16, 19 (1980) (recognizing cause of action against federal prison officials for failure to provide adequate medical care in violation of the Eighth Amendment); *Davis v. Passman*, 442 U.S. 228, 230, 248–49 (1979) (recognizing cause of action against a Congressperson for workplace sex discrimination in violation of the Fifth Amendment). But this caselaw has since been narrowly construed and the Supreme Court has "declined 11 times to imply a similar cause of action for other alleged constitutional violations." *Egbert v. Boule*, 596 U.S. 482, 486 (2022). Whether a *Bivens* claim may proceed requires determining "whether the plaintiff's case presents 'a new *Bivens* context,'" *Snowden v. Henning*, 72 F.4th 237, 242 (7th Cir. 2023) (quoting *Egbert*, 596 U.S. at 492), *cert. denied*, 145 S. Ct. 137 (2024), and "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy," *Egbert*, 596 U.S. at 492 (quotation marks omitted). Consideration of the separation of powers concerns inherent in a federal court reviewing the disciplinary practices and decisions of the Department of the Army would likely preclude this Court from recognizing a *Bivens* remedy in this context. *See, e.g.*, *Hernandez v. Mesa*, 589 U.S. 93, 113 (2020).

federal agency within two years of their accrual, 28 U.S.C. § 2401(b), which generally occurs "when a plaintiff either (1) has actual, subjective knowledge that a government act or omission may have caused their injury, *or* (2) has information that would prompt a reasonable person to inquire further into a potential government-related cause of the injury, whichever happens first," *Hayes v. Presence Chi. Hosp. Network*, No. 23 C 1749, 2025 WL 947921, at *4 (N.D. Ill. Mar. 30, 2025) (quotation marks omitted). The May 23, 2002 Hearing Transcript suggests that Plaintiff attributed his blindness to that 1989 assault, and therefore the government, by at least 2002, if not much earlier. It is wholly unclear why Plaintiff waited until now to file this lawsuit, nor why such a delay was justifiable.

Too many dots are left unconnected by Plaintiff's Complaint. In all likelihood, either this Court cannot adjudicate Plaintiff's claims or Plaintiff has waited too long to seek redress for the conduct which is actually described in his Complaint. But when a court dismisses a complaint for failing to state a claim, it typically must give the plaintiff at least a second chance at amending his complaint. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 518 (7th Cir. 2015). Therefore, the Court DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint. Plaintiff may seek the Court's leave to file an amended complaint by May 7, 2025.

### III.     Motion to Request Counsel

"[P]arties to civil litigation have no right to counsel." *Thornhill v. Cox*, 113 F. App'x 179, 181 (7th Cir. 2004). Before the Court may consider whether it should attempt to recruit counsel on a litigant's behalf, that litigant must first demonstrate that he is indigent. *See Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021); *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (specifying that the federal IFP statute, 28 U.S.C. § 1915(e)(1), applies to "indigent" civil

7

plaintiffs). Because Plaintiff has not demonstrated his indigency, he may not request that the Court attempt to recruit counsel on his behalf. Plaintiff's motion to request counsel is DENIED WITHOUT PREJUDICE. Should Plaintiff decide to file an amended IFP motion, he may also file an amended motion to request counsel by May 7, 2025. That motion should include documentation that demonstrates that specific law firms or legal organizations declined to provide Plaintiff with representation and should explain why Plaintiff is not competent to litigate this case himself.

## CONCLUSION

Accordingly, Plaintiff William Henry Frison Jr.'s Complaint, ECF No. 1, is DISMISSED WITHOUT PREJUDICE for failure to state a claim; his motion to proceed *in forma pauperis* ("IFP"), ECF No. 2, is DENIED WITHOUT PREJUDICE; and his motion to request counsel, ECF No. 3, is DENIED WITHOUT PREJUDICE. Plaintiff may file an amended motion to proceed IFP, may seek the Court's leave to file an amended complaint, and may file an amended motion to request counsel by May 7, 2025.

Entered this 16th day of April, 2025.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE